UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE A.[1],                                          19-CV-00991-MJR
                                                         DECISION AND ORDER
                        Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,[2]

                        Defendant.

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

        Plaintiff Michelle A. brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying her Supplemental Security Income ("SSI") under the

Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons,

plaintiff's motion (Dkt. No. 9) is granted, the Commissioner's motion (Dkt. No. 13) is

denied and the matter is remanded to the Commissioner for further administrative

proceedings consistent with this Decision and Order.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr.,
Chief Judge of the United States District Court for the Western District of New York, this Decision and
Order will identify plaintiff using only her first name and last initial in order to better protect personal and
medical information of non-governmental parties.
[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party
pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

Plaintiff filed an application for SSI on April 19, 2016, alleging disability since April 19, 2015 due to, *inter alia*, bipolar disorder, post-traumatic stress disorder, agoraphobia, depression, anxiety, panic disorder, panic attacks, anger management issues and racing thoughts. (*See* Tr. 56-57, 144-49, 160-75, 207)[4] Plaintiff's disability benefits application was initially denied on August 1, 2016. (Tr. 81) Plaintiff timely filed a written request for a hearing on August 10, 2016. (Tr. 97-102) A hearing was held before Administrative Law Judge Bryce Baird ("the ALJ") on July 12, 2018. (Tr. 27-55) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Dawn Blythe ("the VE"). (*Id.*) On August 20, 2018, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 12-21) The Appeals Council denied plaintiff's request for review of the ALJ's determination on May 29, 2016, and this action followed. (Tr. 1-6)

Born on June 12, 1978, plaintiff was forty years old on the date of the hearing. (Tr. 247) She earned her GED in 1996 and has previously worked as a floral design assistant. (Tr. 208) She also worked for very short periods of time in housekeeping, as an embroidery finisher, and as an assistant at an animal hospital. (*Id.*)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

---

[3] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[4] References to "Tr." are to the administrative record in this case.

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    _Standards for Determining "Disability" Under the Act_

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  _Id._ §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience."  _Dumas v. Schweiker_, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (_quoting Miles v. Harris_, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  _Id._ §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  _Id._  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

4

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work,

then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of April 19, 2016. (Tr. 14) At step two, the ALJ found that plaintiff has the severe impairments of bipolar disorder, generalized anxiety disorder, major depressive disorder, cannabis use disorder and post-traumatic stress disorder ("PTSD").[5] (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15-16) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform a full range of medium work, and has no limitations sitting, standing, or walking. She is limited to work involving simple, routine tasks that can be learned after a

---

[5] Also at step two, the ALJ found that there was no objective evidence in the record that plaintiff's acid reflux, ulcerative esophagitis, sleep apnea, high cholesterol and borderline diabetes caused more than a minimal limitation in her ability to perform basic work requirements, and thus they were not severe impairments. (Tr. 14-15) The ALJ further noted that plaintiff's mental health treatment records showed that her prior opioid addiction was in full remission. (*Id.*)

short demonstration or within 30 days: work that does not require more than simple work related decisions; work [that] does not require travel to unfamiliar places; and work that does not require teamwork, such as production line.  She is limited to no more than superficial contact with the public, and up to occasional interaction with coworkers.  She is limited to work that allows an individual to be off task 5% of the workday, in addition to regularly scheduled breaks.

(Tr. 16-19)  Proceeding to step four, the ALJ found that plaintiff has no past relevant work.

(Tr. 19)  At step five, the ALJ considered plaintiff's age, education, work experience, and

RFC and concluded that there are jobs that exist in significant numbers in the national

economy that plaintiff can perform, such as housekeeping cleaner, mail clerk, and

industrial cleaner.  (Tr. 19-20)  The ALJ ultimately concluded that plaintiff has not been

under a disability, as defined by the Act, since April 19, 2016, the date plaintiff's SSI

application was filed.  (Tr. 20)

IV.    _Plaintiff's Challenges_

Plaintiff argues that the ALJ erred by rendering a highly specific RFC after rejecting

the medical opinions in the record.  (_See_ Dkt. No. 9 (Plaintiff's Memo. of Law))

Specifically, plaintiff argues that the ALJ's finding that plaintiff would be off-task five

percent of the work day is not supported by substantial evidence.  The Court agrees with

plaintiff's objections to this portion of the RFC and finds, for the reasons discussed below,

that remand is appropriate.

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R.

§404.1545(a)(1).  Specific RFC assessments, like percentage of time spent off-task

during a workday, must be based on evidence in the record, not on an "ALJ's surmise."

_Cosnyka v. Colvin_, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order).  Here, the ALJ

made a highly detailed RFC finding, much of which is well-reasoned and supported by

substantial evidence.  However, the ALJ's assessment that plaintiff would be off-task for five percent of the workday, in addition to any regularly scheduled breaks, finds no support in the record.  The ALJ cites no evidence in the record, medical or otherwise, suggesting that plaintiff would be off-task for this specific percentage of time.  In fact, there are no medical opinions, treatment records or other evidence in the record stating a specific amount of time, if any, plaintiff would be off-task during a workday.  Case law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation.  *See Wouters v. Comm'r of Soc. Sec.*, 19-CV-610, 2020 U.S. Dist. LEXIS 80565 (WDNY May 7, 2020) (finding that the ALJ's conclusion that the claimant would be off-task five percent of the time was not supported by substantial evidence because the ALJ pointed to no evidence indicating why plaintiff would be off-task for this specific percentage of time); *Austin v. Comm'r of Soc. Sec.*, 19-CV-638, 2020 U.S. Dist. LEXIS 172633 (WDNY Sept. 21, 2020) (the RFC determination that plaintiff would be "off task up to three percent of the workday due to symptom exacerbations" was not supported by substantial evidence where "nowhere [in the record] is there an opinion or testimony providing that [plaintiff] would be off-task up to three percent of the workday due to her symptoms...[and] this number came solely from the ALJ."); *Elder v. Comm'r of Soc. Sec.*, 18-CV-1196, 2019 U.S. Dist. LEXIS 205159 (WDNY Nov. 26, 2019) (remand required where nothing in the record supported the ALJ's specific mental RFC determination that [claimant] would be off task for no more than "five minutes...per hour" and noting that "if the ALJ wishes to address the time that [plaintiff] can stay on task, she should recontact [plaintiff's] physicians to get their opinions on that issue.")

The need for more specific evidence as to the amount of time plaintiff would be off-task is especially relevant here, since the ALJ gave diminished weight to all medical opinions in the record.  In June of 2016, consultative examiner Gregory Fabiano, Ph.D., opined that "[t]he claimant does not appear to have any evidence of limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently or make appropriate decisions."  (Tr. 797-801)  The ALJ gave only some weight to this opinion, and instead determined that plaintiff has greater mental limitations than those assessed by Dr. Fabiano.  (Tr. 15, 18) Specifically, the ALJ concluded that plaintiff is unable to complete complex tasks, and that she has moderate limitations with regard to concentrating, persisting or maintaining pace, as well as periods of poor concentration due to social anxiety.  (Tr. 15, 18)  The ALJ went on to afford little weight to psychiatric nurse practitioner Sharon Yager's July 2018 opinion that plaintiff is unable to maintain attention and concentration for a two hour segment or complete a normal workday and that she is seriously limited in her ability to maintain regular attendance, perform at a consistent pace, deal with normal work stress and engage in simple tasks.  (Tr. 19, 1203-06)  Thus, while the ALJ rejected NP Yager's opinion that plaintiff has significant difficulty maintaining attention and concentration as well as performing at a consistent pace, he also found, contrary to Dr. Fabiano, that plaintiff has at least moderate limitations in this area.  Given the fact that the ALJ did not fully accept either medical opinion as to plaintiff's ability to timely complete tasks or maintain concentration, persistence and pace, it is unclear how the ALJ made the very specific determination that plaintiff would be off-task five percent of the workday in

addition to any regularly scheduled breaks.  *See e.g.*, *Wouters*, 2020 U.S. Dist. LEXIS 80565, *5 ("Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the [off-task] limitations set forth in the RFC came from and why they did not go further.").  To be sure, an ALJ is free to choose between properly submitted medical opinions, but may not substitute his own lay opinion for those of the medical experts.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  "Without some explanation" from the ALJ "as to the tether between [the] RFC and the…medical opinions or statements from plaintiff, the RFC appears to be based upon [the ALJ's] lay opinion of plaintiff's limitations, which is not permitted and requires remand." *Joran v. Berryhill*, 1:17-CV-00509, 2018 U.S. Dist. LEXIS 195216 (WDNY Nov. 15, 2018).

Finally, the ALJ's error in assessing plaintiff's off-task time was not harmless.  The VE testified that an employer's "tolerance for off-task time" would be less than ten percent. (Tr. 53-54)  In other words, the VE explained that a mental health impairment which caused an individual to be off-task ten percent or more of the work day, in addition to regularly scheduled breaks, would preclude employment.  (*Id.*)  Thus, if plaintiff here were to be off-task even a little more than the five percent allowed by the ALJ, she may be disabled under the Act.  *See Elder*, 2019 U.S. Dist. LEXIS 205159, *15 ("At best, then, the ALJ's conclusion comes from whole cloth.  At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.") In short, because the five percent off-task formulation is not supported by substantial evidence, and this finding was highly significant to the VE's conclusion that there were

jobs which plaintiff could perform, remand is warranted.  *See Cosnyka*, 576 F. App'x at 46 ("Because there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the claimant] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits."); *Edwards v. Comm'r of Soc. Sec.*, 18-CV-862, 2020 U.S. Dist. LEXIS 148948 (WDNY Aug. 18, 2020) (noting that the percent of off-task time was "absolutely critical" to the disability determination where the VE testified that, if the off-task time was ten percent or more, the limitation would be "work preclusive" and accordingly "the Court cannot say that the ALJ's failure to tether the percent of off-task time to evidence in the record was harmless error.").  On remand, the Commissioner should further develop the record to specifically address the time that plaintiff can remain on task over the course of a workday.

Plaintiff further argues that the RFC is not supported by substantial evidence because it is silent as to her ability to interact with supervisors.  (*See* Dkt. No. 9 (Plaintiff's Memo. of Law))  The Court agrees and finds that the ALJ's failure to evaluate plaintiff's ability to interact with supervisors is also a basis for remand.

Dr. Fabiano opined that plaintiff has moderate limitations in her ability to relate adequately with others and appropriately deal with stress.  (Tr. 18, 800)  In his decision, the ALJ credited this opinion and acknowledged that the record supports a finding that plaintiff has "moderate limitations in interacting with others due to her anxiety."  (Tr. 18)  To that end, the ALJ imposed restrictions, in the RFC, as to plaintiff's ability to interact with both the public and with co-workers.  (Tr. 16)  Specifically, the RFC limits plaintiff to: (1) work that does not require teamwork; (2) work which requires no more than superficial

contact with the public; and (3) work which requires only occasional interaction with co-workers. (*Id.*) However, the RFC imposes no restrictions as to plaintiff's ability to interact with supervisors. Moreover, nowhere in his decision does the ALJ discuss or analyze plaintiff's ability to interact with supervisors.

"The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions does not account for limitations on the third." *Smith v. Colvin*, 16-CV-00295, 2017 U.S. Dist. LEXIS 17226 (WDNY Feb. 7, 2017) (internal citations and quotations omitted). As explained above, it is clear that the ALJ found that plaintiff's mental health impairments affected her ability to interact with others. In fact, he imposed a number of specific restrictions in the RFC to accommodate plaintiff's limitations in this regard. It is further clear that the ALJ understood that the public, co-workers and supervisors are three distinct groups, since he offered separate limitations as to plaintiff's ability to interact with the public and with co-workers in the RFC. The ALJ's failure to then either impose a limitation as to plaintiff's ability to interact with supervisors, or to explain, based upon the evidence in the record, why one was not necessary, is an error which requires remand. *See Rivera v. Berryhill*, 18-CV-122, 2019 U.S. Dist. LEXIS 128829 (WDNY Aug. 1, 2019) (remand required where the hypothetical posed to the vocational expert imposed no limitations on plaintiff's ability to interact with co-workers or supervisors even though the ALJ determined that plaintiff had moderate limitations in interacting with others and accepted the consultative examiner's opinion that plaintiff was moderately

limited in his ability to relate adequately with others and socialize). [6]  To be sure, an RFC which goes to mental impairments must be sufficiently specific and supported by detailed evidence.  *See Martin v. Colvin*, 1:15-CV-01067, 2017 U.S. Dist. LEXIS 11067, *8-9 (WDNY Jan. 26, 2017) (an ALJ's duty to develop the record is heightened where mental conditions are present).  This heightened duty "derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456 (SDNY 2016).

Lastly, plaintiff argues that the ALJ failed to properly evaluate her credibility. (*See* Dkt. No. 9 (Plaintiff's Memo. of Law))  Since the Court finds that the ALJ's RFC determination is not supported by substantial evidence, the Commissioner is directed to reevaluate the credibility determination on remand.  *See Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 78 n. 5 (2d Cir. 2012); *Weiland v. Colvin*, 6:16-CV-06100, 2017 U.S. Dist. LEXIS 15947 (WDNY Feb. 4, 2017) (where remand was ordered for reconsideration of plaintiff's RFC and further development of the administrative record, the court declined to address plaintiff's credibility arguments since "plaintiff's credibility must be

---

[6] The Commissioner argues that even if the ALJ erred by failing to include additional restrictions on plaintiff's ability to interact with supervisors, remand is not required since the jobs identified by the ALJ require little instruction or social interaction.  The Court notes that there is evidence in the record to suggest that plaintiff's mental impairments could affect her ability to perform a job that required even limited interaction with supervisors.  NP Yager, who consistently treated plaintiff between 2014 and 2018, opined that plaintiff was seriously limited in her ability to accept instruction and criticism from supervisors, respond appropriately to changes, and deal with normal work stress. (Tr. 1203-06) In November of 2017, NP Yager indicated that plaintiff's "mental health symptoms make it difficult to interact with others and leads to avoidance, would be unable to maintain employment." (Tr. 1156) In April of 2018, another treating nurse practitioner noted that plaintiff was "significantly mentally ill", and suffering from paranoia, anger issues, and PTSD. (Tr. 1259) While the ALJ did not credit these opinions, he imposed specific restrictions on plaintiff's ability to interact with co-workers and the public.  This begs the question whether additional restrictions are needed as to supervisors as well.  Because the ALJ's decision is silent on this issue, remand is warranted.

reconsidered on remand upon thorough consideration of the fully developed administrative record.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 9), defendant's motion for judgment on the pleadings is denied (Dkt. No. 13), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.


**SO ORDERED.**


Dated:        December 8, 2020
              Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

14